IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| MATTHEW JACKSON,<br><br>                     Plaintiff,<br><br>vs.<br><br>RAY KLEIN, INC., et al.<br><br>                     Defendant. | Case No. 1:20-cv-01367<br><br>RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Comes now Defendant Ray Klein, Inc. (Defendant), by and through undersigned counsel, and responds in opposition to Plaintiff's Motion for Summary Judgment and Statement of Facts.

### A. Introduction

Plaintiff has moved for summary judgment on his allegation that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(8) by failing to communicate a dispute to the TransUnion credit reporting agency. Defendant maintains that the dispute was communicated at all relevant times and is still being communicated.

### B. Response to Plaintiff's Statement of Facts pursuant to LR 56(b)(2)

1. Plaintiff allegedly owed a debt for a defaulted account with Consumer Cellular (the "subject debt"). (Declaration of Matthew Jackson, attached hereto as Exhibit 1, ¶¶4-5; *see also* Defendant's Responses to Plaintiff's First Requests for Admission, attached hereto as Exhibit 2, Nos. 1, 5, 6).

**RESPONSE: Disputed in part. Whether or not the account was "defaulted" is a decision for the original creditor, not Plaintiff or Defendant. Otherwise undisputed.**

2. The subject debt was incurred primarily for personal, household, or family purposes. (Ex. 1, ¶¶4-5; *see also* Ex. 2, Nos. 1, 5, 6).

**RESPONSE: Undisputed.**

3. Defendant Ray Klein, Inc., d/b/a Processional Credit Service ("PCS") operates as

a collection agency, which regularly collects delinquent consumer debts owed to another. (Transcript of the Deposition of Mark Hasson as the Corporate Representative of Defendant per Rule 30(b)(6), excerpts of which are attached hereto as <u>Exhibit 3</u>, at 13:3-14:7; *see also* Ex. 2, No. 3).

**RESPONSE: Undisputed.**

4. PCS uses instrumentalities of interstate commerce in connection with its debt collection business. (Ex. 2, No. 7).

**RESPONSE: Undisputed.**

5. PCS attempted to collect the subject debt from Plaintiff after the subject debt went into default. (Ex. 2, No. 8; *see also* Ex. 3, at 13:3-14:7).

**RESPONSE: Disputed in part. Whether or not the account was "defaulted" is a decision for the original creditor, not Plaintiff or Defendant. Otherwise undisputed.**

6. On April 30, 2019, Plaintiff, through counsel, sent an email to PCS regarding the subject debt that included a dispute letter that stated, in relevant part, "the amount reported is not accurate." (Declaration of Michael Jacob Wood, attached hereto as <u>Exhibit 4</u>, at Exhibit A thereto; *see also* Plaintiff's Complaint, attached hereto as <u>Exhibit 5</u>, ¶29; PCS's Answer to Complaint, attached hereto as <u>Exhibit 6</u>, ¶29).

**RESPONSE: Undisputed.**

7. PCS received the email that contained the dispute. (Ex. 2, No. 11; Ex. 5, ¶30; Ex. 6, ¶30).

**RESPONSE: Undisputed.**

8. On June 25, 2019, PCS communicated information regarding the subject debt to credit reporting agencies. (Credit Reporting Communications from PCS to Credit Reporting Agencies, attached hereto as <u>Exhibit 7</u>, at p.1; *see also* (Ex. 3, at 27:6-28:23 (describing Ex. 7 as communications from PCS to credit reporting agencies regarding the subject debt)).

**RESPONSE: Undisputed.**

9. The June 25, 2019 communication from PCS to credit reporting agencies included the code "XB", which indicates that the consumer has a dispute about the debt that is being reported. (Ex.7, at p.1; Ex. 3, at 31:15-32:9).

**RESPONSE: Undisputed.**

10. On or about September 10, 2019, Plaintiff, through counsel, sent a certified letter to PCS again disputing the subject debt which stated, in relevant part, as follows:

> Our office previously contacted you regarding the above referenced account to inform you that the debt you were reporting was not accurate. Our client does not believe they owe any debt to your company, regardless of whether they owed a debt to the original creditor.
>
> To date, despite my client's prior dispute, we still have not received any proof of ownership of this account. Please send a copy of the purchase and sale agreement pertaining to this account immediately or my client has authorized me to inform the credit bureaus that this debt is not owed to your company.
>
> As you are reporting the alleged debt, you have an obligation to investigate; please do not ignore my client's request. If you do not respond with proof of ownership within 30 days I will contact the credit bureaus on my client's behalf.
>
> If you have any questions or would like to discuss this account further, please contact our office. Thank you for your prompt attention to this matter.

(Ex. 4, at Exhibit B thereto; Ex. 5, ¶32; Ex. 6, ¶32; Ex. 2, No. 13).

**RESPONSE: Undisputed.**

11. PCS received this second dispute letter on or about September 16, 2019. (Ex. 5, ¶33; Ex. 6, ¶33; Ex. 2, No. 13).

**RESPONSE: Undisputed.**

12. On October 1, 2019, PCS communicated information regarding the subject debt to credit reporting agencies. (Ex. 3, at 32:10-14; Ex. 7, at p.1).

**RESPONSE: Undisputed.**

13. The October 1, 2019 communication from PCS to credit reporting agencies included the code "XB", which indicates that the consumer has a dispute about the debt that is being reported. (Ex. 3, at 32:10-14; Ex. 7, at p.1).

**RESPONSE: Undisputed.**

14. On November 13, 2019, PCS communicated information regarding the subject debt to credit reporting agencies. (Ex. 3, at 32:15-21; Ex. 7, at p.2).

**RESPONSE: Undisputed.**

15. The November 13, 2019 communication from PCS to credit reporting agencies did not include the "XB" code indicating that the consumer has a dispute about the debt that his being reported. (Ex. 3, at 32:15-21; Ex. 7, at p.2).

**RESPONSE: Disputed in part. The "XB" code was not included, but PCS did indicate the consumer has a dispute about the debt by not including the "XR" or any other code to remove or change the dispute.**

16. As of November 13, 2019, Plaintiff had not withdrawn his dispute about the subject debt. (Ex. 3, at 32:22-33:1).

**RESPONSE: Undisputed.**

17. PCS's November 13, 2019 communication to the credit reporting agencies did not contain any indication that Plaintiff disputed the subject debt. (Ex. 3, at 32:15-33:9; Ex. 7, at p.2).

**RESPONSE: Disputed. PCS did not remove the dispute in its November 13, 2019, communication to the credit reporting agencies, therefore the dispute was indicated. Plaintiff's own exhibit clearly shows no removal of the dispute.**

18. On December 16, 2019, PCS communicated information regarding the subject debt to credit reporting agencies. (Ex. 3, at 33:10-23; Ex. 7, at p.2).

**RESPONSE: Undisputed.**

19. The December 16, 2019 communication from PCS to credit reporting agencies did not include the "XB" code indicating that the consumer has a dispute about the debt that his being reported. (Ex. 3, at 33:10-23; Ex. 7, at p.2).

**RESPONSE: Disputed in part. The "XB" code was not included, but PCS did indicate the consumer has a dispute about the debt by not including the "XR" or any other code to remove or change the dispute.**

20. As of December 16, 2019, Plaintiff had not withdrawn his dispute about the subject debt. (Ex. 3, at 33:10-23).

**RESPONSE: Undisputed.**

21. PCS's December 16, 2019 communication to the credit reporting agencies did not contain any indication that Plaintiff disputed the subject debt. (Ex. 3, at 33:10-23; Ex. 7, at p.2).

**RESPONSE: Disputed. PCS did not remove the dispute in its December 16, 2019, communication to the credit reporting agencies, therefore the dispute was indicated. Plaintiff's own exhibit clearly shows no removal of the dispute.**

22. On February 7, 2020, PCS communicated information regarding the subject debt to credit reporting agencies. (Ex. 3, at 33:24-35:16; Ex. 7, at p. 3).

**RESPONSE: Undisputed.**

23. The February 7, 2020 communication from PCS to credit reporting agencies did not include the "XB" code indicating that the consumer has a dispute about the debt that his being reported. (Ex. 3, at 33:24-35:16; Ex. 7, at p. 3).

**RESPONSE: Disputed in part. The "XB" code was not included, but PCS did indicate the consumer has a dispute about the debt by not including the "XR" or any other code to remove or change the dispute.**

24. As of February 7, 2020, Plaintiff had not withdrawn his dispute about the subject debt. (Ex. 3, at 33:24-35:16).

**RESPONSE: Undisputed.**

25. PCS's February 7, 2020 communication to the credit reporting agencies did not contain any indication that Plaintiff disputed the subject debt. (Ex. 3, at 33:24-35:16; Ex. 7, at p. 3).

**RESPONSE: Disputed. PCS did not remove the dispute in its February 7, 2020, communication to the credit reporting agencies, therefore the dispute was indicated. Plaintiff's own exhibit clearly shows no removal of the dispute.**

26. On March 24, 2020, PCS communicated information regarding the subject debt to credit reporting agencies. (Ex. 3, at 34:17-35:4; Ex. 7, at p. 3).

**RESPONSE: Undisputed.**

27. The March 24, 2020 communication from PCS to credit reporting agencies did not include the "XB" code indicating that the consumer has a dispute about the debt that his being reported. (Ex. 3, at 34:17-35:4; Ex. 7, at p. 3)

**RESPONSE: Disputed in part. The "XB" code was not included, but PCS did indicate the consumer has a dispute about the debt by not including the "XR" or any other code to remove or change the dispute.**

28. As of March 24, 2020, Plaintiff had not withdrawn his dispute about the subject debt. (Ex. 3, at 34:17-35:4).

**RESPONSE: Undisputed.**

29. PCS's March 24, 2020 communication to the credit reporting agencies did not contain any indication that Plaintiff disputed the subject debt. (Ex. 3, at 34:17-35:4; Ex. 7, at p. 3).

**RESPONSE: Disputed. PCS did not remove the dispute in its March 24, 2020, communication to the credit reporting agencies, therefore the dispute was indicated. Plaintiff's own exhibit clearly shows no removal of the dispute.**

30. On May 29, 2020, PCS communicated information regarding the subject debt to credit reporting agencies. (Ex. 3, at 35:5-16; Ex. 7, at p. 4).

**RESPONSE: Undisputed.**

31. The May 29, 2020 communication from PCS to credit reporting agencies did not include the "XB" code indicating that the consumer has a dispute about the debt that his being reported. (Ex. 3, at 35:5-16; Ex. 7, at p. 4).

**RESPONSE: Disputed in part. The "XB" code was not included, but PCS did indicate the consumer has a dispute about the debt by not including the "XR" or any other code to remove or change the dispute.**

32. As of May 29, 2020, Plaintiff had not withdrawn his dispute about the subject debt. (Ex. 3, at 35:5-16).

**RESPONSE: Undisputed.**

33. PCS's May 29, 2020 communication to the credit reporting agencies did not contain any indication that Plaintiff disputed the subject debt. (Ex. 3, at 35:5-16; Ex. 7, at p. 4).

**RESPONSE: Disputed. PCS did not remove the dispute in its May 29, 2020, communication to the credit reporting agencies, therefore the dispute was indicated. Plaintiff's own exhibit clearly shows no removal of the dispute.**

34. PCS maintains that it made no errors in its credit reporting on the subject debt, including the credit reporting on November 13, 2019; December 16, 2019; February 7, 2020; March 24, 2020; and May 29, 2020. (Ex. 3, at 53:18-54:15).

**RESPONSE: Undisputed.**

35. PCS has adopted portions of the Consumer Data Industry Association Credit Reporting Resource Guide (the "CDIA Guide) as its policies and procedures for preventing FDCPA violations. (Ex. 3, at 55:7-56:2).

**RESPONSE: Undisputed.**

36. Pursuant to the CDIA Guide, PCS can either (a) report Plaintiff's dispute a single time and it will remain on the credit reporting agencies' files for Plaintiff until PCS seeks to change or remove the dispute, or (b) report Plaintiff's dispute each time that PCS reports about the subject debt. (Ex. 3, at 56:21-57:3, 57:13-58:14; *see also* Excerpts from CDIA Guide, attached hereto as Exhibit 8, at p.5).

**RESPONSE: Undisputed.**

37. PCS stated in its deposition, "After it [Plaintiff's dispute] has been reported, whether I report it or not, the file [with the credit reporting agencies] doesn't change unless I do a removal code . . . ." (Ex. 3, at 68:7-10).

**RESPONSE: Undisputed.**

38. PCS stated in its deposition, "[T]he XB will remain upon their [the consumer's] file [with the credit reporting agencies] until such time as I remove it with an XR or another code. And it [the CDIA Guide] says, I can report XB every month, but I don't have to." (Ex. 3, at 56:24-57:2).

**RESPONSE: Undisputed.**

39. Pursuant to PCS's policies and procedures for credit reporting, PCS can report the "XB" dispute code every time it reports the subject debt if PCS chooses to include the "XB" dispute code in such reporting. (Ex. 3, at 56:21-57:3, 57:13-58:14; Ex. 8, at p.5).

**RESPONSE: Disputed in part. Plaintiff's phrasing is confusing. The deposition testimony of its witness cited in this paragraph concerns the witness's interpretation of guidance jointly issued by the CRAs of Experian, Equifax,**

PAGE 8

Justin E. Murphy
12204 SE Mill Plain Blvd.
Vancouver, WA 98684
(425) 457-7470

**Innovis, and Transunion on how to communicated a dispute. Nothing in the cited testimony involved a discussion of PCS policies and procedures.**

40. TransUnion's credit report for Plaintiff, dated April 6, 2020, contains a report for the subject debt from PCS, but does not include Plaintiff's dispute. (Excerpt Plaintiff's TransUnion Credit Report dated April 6, 2020 (private and irrelevant information redacted), attached hereto as Exhibit 9, at p.6).

**RESPONSE: Disputed in part. The text is generally true, but PCS communicated the dispute to Transunion on June 25, 2019, and had an expectation that the dispute would appear on Plaintiff's report thereafter until removed regardless of the specific date.**

### C. Memorandum Argument

#### 1. Standing

Based on recent binding Seventh Circuit case law, Plaintiff's does not have standing to maintain this action. Plaintiff has not shown a concrete injury of the kind necessary to have standing to sue under Article III, §2 of the Constitution. "To establish standing, a plaintiff must meet the minimum threshold of having '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Foster v AFNI, Inc.*, 2020 WL 1531651, at *3 (E.D. MI March 31, 2020)(quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (U.S. 2016). "Once the action reaches the summary-judgment stage, the plaintiff must demonstrate standing by submitting evidence that....support[s] each element of standing. *Spuhler v. State Collection Service, Inc.*, 983 F.3d 282, 285 (7th Cir. 2020). Plaintiff fails at all 3 levels.

First, Plaintiff has not established an injury in fact. To establish injury in fact, a plaintiff must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized". *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560 (U.S. 1992). As explained in *Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020),

PAGE 9

Justin E. Murphy
12204 SE Mill Plain Blvd.
Vancouver, WA 98684
(425) 457-7470

particularization is fairly easy- the plaintiff must have personally suffered an actual injury or an imminent threat of injury; but "the concreteness requirement can be trickier". A concrete injury is one that is "real, …not abstract". *Spokeo* at 1548. At the summary judgment stage, a plaintiff must come forward with more than bare allegations and must demonstrate standing by setting forth evidence of specific facts that supports each element of standing. *Lujan* at 561. As the Supreme Court noted in *Spokeo*, "not all inaccuracies [in a credit report] cause harm or present any material risk of harm". In this matter, Plaintiff has failed to show how the dispute missing on just TransUnion's reports resulted in a concrete harm. Plaintiff has not alleged or shown that his credit score was actually altered in any way by Transunion's failure to note the dispute. Plaintiff has not set forth any evidence that he suffered any harm in the way of denied credit by a creditor that based their decision on his Transunion credit score. Lastly, Plaintiff has not alleged or submitted any evidence that his decisions in handling this debt were altered. See *Markakos v. Medicredit*, Inc., 997 F.3d 778, 780 (7th Cir. 2021).

Plaintiff cannot show that the dispute being missing on TransUnion's reports is traceable to Defendant's conduct. In fact, all the evidence submitted by both parties and by the now third-party former Co-Defendants, shows that the fault for the dispute not appearing on TransUnion's reports lies with TransUnion itself. The Consumer Data Industry Association ("CDIA") Resource guide instructs furnishers in how to properly report a dispute using the Metro 2 reporting system, and instructs furnishers "the code should be reported one time and will remain on file until another Compliance Condition Code or the XR (Removal code) is reported." (PSOF 36-38, Ex. 8 page 5) TransUnion is the only one of the three bureaus to have not followed the instructions that all three bureaus jointly promulgate to date furnishers. There is no evidence that the lack of the dispute appearing on TransUnion's reports were the result of Defendant's actions.

Lastly, since it was not Defendant's conduct that resulted in the harm, there is no way the harm can redressed by a favorable judicial decision against Defendant. The evidence shows that even if Defendant had changed its conduct, the end result of the dispute missing from TransUnion's reports, would have been the same.

Plaintiff cannot assert they were harmed at all and certainly cannot show that the non-existent harm was traceable to Defendant's conduct or that a favorable judicial

PAGE 10

Justin E. Murphy
12204 SE Mill Plain Blvd.
Vancouver, WA 98684
(425) 457-7470

decisions would magically make the harm exist. See also *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Pennell v. Glob. Tr.Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021).

### 2. Count One

As to Plaintiff's 15 U.S.C. § 1692e(8) claim regarding the credit reporting dispute, Defendants contends that even if the Court were to find Plaintiff had standing to continue pursuing that claim, it still fails as a matter of law because Defendant did not commit a violation. The crux of the dispute turns on the parties' differing opinion on the word "communicating". Plaintiff takes an unreasonably and myopically absurd view of the requirement and asserts that every credit reporting file submitted to the bureaus must contain the "XB" condition code simply because there is an option to report it. Defendant looks at the instructions given to it on how to properly report debts using the Metro 2 format. As previously noted, the CDIA Resource Guide does that on behalf of all the major credit bureaus. By following the instructions in the CDIA guide that "the code should be reported one time and will remain on file until another Compliance Condition Code or the XR (Removal code) is reported", Defendant **IS** affirmatively communicating the dispute with every submission by not including either the XR code or a different code that would change the dispute. (PSOF 36-38, Exhibit 8, pg. 5). In his motion, Plaintiff repeatedly misconstrues Defendant's position and falsely states on multiple occasions that PCS failed to indicate, report, or communicate Plaintiff's dispute on the credit reporting communications after October, 2019. Defendant maintains that it did in fact; indicate, report, or otherwise communicate Plaintiff's dispute on all credit reporting communications from June 25, 2019, to the present. Simply put, Defendant is following a long-established process that was put in place to assist furnishers in complying with various laws related to credit reporting, including the FDCPA and FCRA. Not only did

PAGE 11

Justin E. Murphy
12204 SE Mill Plain Blvd.
Vancouver, WA 98684
(425) 457-7470

Defendant affirmatively communicate the dispute, it effectively communicated the dispute. This is evidenced by the fact that Plaintiff can point to Transunion as being the only credit reporting agency to miss placing the dispute on Plaintiff's credit file as Plaintiff concedes both Experian and Equifax marked the account as disputed.

Plaintiff is trying to create new law by asking this Court to create new standards of conduct not currently contained in the FDCPA.

### 3. Bona Fide Error

Defendant admits this is not a traditional bona fide error matter, as its defense to the action is that it did not commit a violation, and is using a trade industry guide- the CDIA- as a written document upon which it relied, Defendant still believes the defense should be applicable. While not strictly a policy or procedure, collection agencies may use the defense when it relies on information from its client as long as that reliance is "reasonable". *Reicher v. National Credit Systems, Inc.* 531 F.3d 1002, 1006 (9th Cir. 2008). Defendant contends that relying on an instructional document on how to properly report a dispute to a consumer's credit report is similar to using the defense by asserting reliance on information from the original creditor. While Defendant could not find case law specifically addressing this, Defendant still contends that the same logic should apply in this situation and further asserts that its reliance on the CDIA's instructions was reasonable.

### D. Conclusion

The Court should enter an order denying Plaintiff's Motion for Summary Judgment.

DATED: July 9, 2021

/s/ Justin E. Murphy

Justin E. Murphy, WSBA #54392
Attorney for Defendant Ray Klein, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, I electronically filed the foregoing document using the CM/ECF System, which will send notification of such filing to the attorneys of record for the parties.

DATED: July 9, 2021

/s/*Justin E. Murphy*
Justin E. Murphy
Attorney for Defendant
12204 Se Mill Plain Blvd.
Vancouver, WA 98684
(425)457-7470
jmurphy@professionalcredit.com

PAGE 13

Justin E. Murphy
12204 SE Mill Plain Blvd.
Vancouver, WA 98684
(425) 457-7470